IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

-----------------------------------------------------X

HARTFORD ROMAN CATHOLIC DIOCESAN CORP. : 3:12 CV 1641 (JBA)

V. :

INTERSTATE FIRE & CASUALTY CO. : DATE: FEBRUARY 19, 2014

-----------------------------------------------------X

RULING ON DEFENDANT'S MOTION TO COMPEL PRODUCTION

The factual and procedural history behind this litigation is set forth in this Magistrate Judge's Ruling on Plaintiff's Motion to Compel, filed January 28, 2014 (Dkt. #39)["January 2014 Ruling"] familiarity with which is presumed.[1]

On December 9, 2013, defendant filed the pending Motion to Compel Production of Documents and brief in support. (Dkts. ##34-35).[2] On January 29, 2014, plaintiff filed its brief in opposition. (Dkt. #40[3]; see also Dkts. ##36-37). On February 12, 2014, defendant filed its reply brief. (Dkt. #42).[4]

This motion was referred to this Magistrate Judge by U.S. District Judge Janet Bond

---

[1]The January 2014 Ruling concerned eleven discovery requests. On February 11, 2014, defendant filed its Objection (Dkt. #41) with respect to six of those requests.

[2]Attached to defendant's brief is a declaration from defense counsel, sworn to December 9, 2013 (Exh. A)["Tobin Decl."], with two subexhibits, copy of Defendant's Requests for Production, dated April 26, 2013 (Exh. 1); copy of Plaintiff's Responses and Objections to Defendant's Requests for Production, dated July 25, 2013 (Exh. 2); along with copies of case law (Exh. B).

[3]The following exhibits are attached: affidavit of plaintiff's counsel, sworn to January 29, 2014 (Exh. A)["Federico Aff't"]; copies of case law (Exh. B); affidavit of Attorney John W. Sitarz, also sworn to January 29, 2014 (Exh. C)["Sitarz Aff't"]; affidavit of Monsignor John J. McCarthy, also sworn to January 29, 2014 (Exh. D)["McCarthy Aff't"]; copies of Code of Canon Law (Exh. D).

[4]Three exhibits are attached: copies of case law (Exh. A); additional copies of Code of Canon Law (Exh. B); and copy of Fagelson & Kindseth, Insurance Law: Reaching Excess Layers of Insurance, on www.ctlawtribune.com.

Arterton on November 5, 2013. (Dkt. #29).

For the reasons stated below, defendant's Motion to Compel Production (Dkt. #34) is granted in part.

## I. DISCUSSION

On April 26, 2013, defendant served ninety-five Requests for Production on plaintiff, as to which plaintiff responded, with multiple objections, on July 25, 2013; despite its objections, plaintiff produced approximately 14,000 documents. (Tobin Decl., ¶¶ 3-4 & Exhs. 1-2; Federico Aff't, ¶¶ 4-5). Counsel conferred on September 11, 2013 and again on October 10, 2013, and were able to resolve their disputes with respect to all but twenty-one requests, namely Requests Nos. 3, 4, 14, 15, 16, 19, 21, 34, 35, 36, 39, 41, 54, 55, 56, 59, 61, 66, 67, 73 and 74. (Tobin Decl., ¶¶ 5-12; Federico Aff't, ¶¶ 6-22). Again, despite its objections, plaintiff provided some non-privileged documents to defendant, and defendant already was in possession of others. (Federico Aff't, ¶¶ 10-13, 16, 18-22).

As described by defendant, the documents in dispute fall within three general categories: (1) Personnel Files of Father Robert Ladamus, Father Stephen Crowley and Father Ivan Ferguson (Nos. 19, 39, 59); (2) "Secret Archives" or Canon 489 Files regarding these three priests and pertaining to claims of sexual abuse of a minor by personnel of plaintiff (Nos. 21, 41, 61, 73, 74); and (3) documents reflecting communications between plaintiff and its primary insurers concerning the underlying claims (Nos. 3, 4, 14, 15, 16, 34, 35, 36, 54, 55, 56, 66, 67). (Dkt. #35, at 3-5). Defendant argues that production of the personnel files should be ordered under CONN. GEN. STAT. § 31-128f, as such documents are relevant and any privacy concerns are "slight" as all three priests are deceased. (Id. at 6-10). Defendant further contends that the "Secret Archive" or "Canon 489" files are not

protected under the First Amendment. (Id. at 11-14). And last, defendant maintains that the documents pertaining to communications with plaintiff's primary insurers regarding payment of the underlying claims are relevant, because defendant's excess general liability indemnity coverage is "not triggered" until "the relevant underlying layers of coverage are exhausted." (Id. at 14-19).

Plaintiff has responded that the priests' personnel files cannot be disclosed absent a court order under CONN. GEN. STAT. § 31-128f, an in camera review is required to isolate the non-relevant materials, defendant already has copies of the relevant documents from the R.M., Matthew Doe and Jacob Doe cases, and defendant already is in possession of relevant documents from Father Ferguson's personnel file and Canon 489 file and Father Crowley's personnel file. (Dkt. #40, at 3-13). Plaintiff further argues that the Canon 489 files contain privileged and irrelevant information, some of which may be protected from disclosure under CONN. GEN. STAT. § 52-146b, so that an in camera review is also required. (Id. at 13-19). Plaintiff also asserts that defendant has not established relevance or need for confidential settlement communications with other insurers. (Id. at 19-23). And last, plaintiff contends that it has provided all responsive, non-privileged documents to eleven of the requests, namely Nos. 4, 15, 16, 35, 36, 55, 56, 66, 67, 73, 74. (Id. at 24-25).[5]

In its reply brief, defendant argues that the personnel files should be produced in their entirety without an in camera review (Dkt. #42, at 1-5); that the "secret archive"/"Canon 489 Files" should also be produced and "the record is devoid of any support" that the priest-penitent privilege applies (id. at 5-7); and that the documents reflecting communications between plaintiff and its primary insurers concerning the underlying claims

[5]Plaintiff concedes that it is holding documents to which it asserts a privilege with respect to Nos. 16, 36 and 56. (Dkt. #40, at 24-25; see also Dkt. #42, at 8, n.5). See Section I.C infra.

are "directly relevant[,]" as reflected by a recent article written by plaintiff's counsel. (Id. at 7-10).

A. PERSONNEL FILES OF FATHER ROBERT LADAMUS, FATHER STEPHEN CROWLEY AND FATHER IVAN FERGUSON (NOS. 19, 39, 59)

The four outstanding issues are whether in the context of this case, CONN. GEN. STAT. § 31-128f requires a court order before plaintiff can produce the personnel records of these three priests, whether an in camera review is required or warranted prior to any production, whether there are temporal limits upon what materials could be relevant, and whether defendant already is in possession of some of these materials. (Dkt.#35, at 6-10; Dkt. #40, at 3-13; Dkt. #42, at 1-5).

Contrary to defendant's argument, employers in Connecticut would place themselves at risk by disclosing personnel files without a court order under CONN. GEN. STAT. § 31-128f,[6] particularly in the context of priests who have been accused of the sexual abuse of minors. See, e.g., Dotson v. Hartford Roman Catholic Diocesan Corp., CV 106012742S, 2011 WL 1021745, at *5-7 (Conn. Super. Ct. Feb. 17, 2011); Rosado v. Bridgeport Roman Catholic Diocesan Corp., No. CV 93 0300272S, 1994 WL 700344, at *1-3 (Conn. Super. Ct. Dec. 8, 1994)["Rosado I"]. See also Rosado v. Bridgeport Roman Catholic Diocesan Corp., No. X06 CV 930157085S, 2006 WL 3756521, at *1, 9-10 (Conn. Super. Ct. Dec. 6, 2006)["Rosado

[6]CONN. GEN. STAT. § 31-128f provides in relevant part:

> No individually identifiable information contained in the personnel file . . . of any employee shall be disclosed by an employer to any person or entity not employed by or affiliated with the employer without the written authorization of such employee except . . . where the disclosure is made . . . (2) pursuant to a lawfully issued . . . judicial order. . . .

II"][7], aff'd in part & rev'd in part, 292 Conn. 1, cert. denied sub nom. Bridgeport Roman Catholic Diocesan Corp. v. New York Times Co., 558 U.S. 991 (2009). See also Ruran v. Beth El Temple of W. Hartford, Inc., 226 F.R.D. 165, 169 (D. Conn. 2005); Culkin v. Pitney Bowes, Inc., 225 F.R.D. 69, 73 (D. Conn. 2004).

Bearing in mind the sensitive nature of employment files in this context, as well as the requirement the documents produced are relevant to any party's claim or defense, courts have held that "[t]he proper procedure for the court to follow in making a determination on the discovery of documents contained in [an accused priest's] personnel file is to conduct an in camera inspection of the documents involved." Dotson, 2011 WL 1021745, at *7. See also Rosado I, 1994 WL 700344, at *2 ("In camera review by the court reasonably satisfies the plaintiff's need for information necessary to establish his case while respecting a civil defendant's limited expectation of privacy in his personnel files as reflected in the implicit policy of . . . § 31-128f that the documents in such files not be cavalierly divulged by an employer."). While defendant is correct that CONN. GEN. STAT. § 31-128f does not automatically require an in camera review in every case prior to disclosure of employment records, the case law in Connecticut, as set forth in Dotson and Rosado I, has established that an in camera review is "[t]he proper procedure" in the context of religious leaders accused of sexual abuse of minors. Contrary to defendant's argument (see Dkt. #42, at 2), the deaths of these three priests does not entirely eradicate the concerns expressed in these two decisions.

Plaintiff seeks to place temporal restrictions upon production, limiting the production

---

[7]In Rosado II, the trial judge concluded that "under the circumstances presented by these cases, the public's right to access to documents filed with the court outweighs the employees' interest in the confidentiality of the personnel files[]" under CONN. GEN. STAT. § 31-128f. 2006 WL 3756521, at *9-10.

of the time period before or during allegations of abuse – for Father Ferguson's file, prior to October 1978 with respect to R.M. (who alleged abuse from November 1977 through October 1978)[8] and prior to Fall 1982 with respect to Matthew Doe (who alleged abuse from Summer 1981 through Fall 1982); for Father Crowley's file, prior to Spring 1982 with respect to K.S. (who alleged abuse from Fall 1981 to Spring 1982); and no production at all with respect to Father Ladamus, for which plaintiff claims it was first put on notice by a demand letter sent by J.A.'s attorney on May 30, 2008, and the only other allegation against Father Ladamus occurred after the J.A. claim and outside defendant's policy period. (Dkt. #40, at 8-9; Federico Aff't ¶ 14; Sitarz Aff't, ¶ 4). Defendant is correct that documents that post-date these periods of abuse "may lead to the discovery of admissible evidence, such as references to time periods and/or events indicating knowledge of the part of [plaintiff] and demonstrating how [plaintiff] responded to and handled abuse claims." (Dkt. #42, at 2-3). Thus, there will be no temporal restrictions placed upon the in camera review.

Lastly, plaintiff argues that defendant already is in possession of portions of Father Ferguson's files produced in the R.M., Matthew Doe, and Jacob Doe cases, constituting approximately 160 pages, and of Father Crowley's personnel file produced in another case in April 2004, and Father Ladamus' personnel file contains no relevant information. (Dkt. #40, at 10-12; Federico Aff't ¶¶ 10-14; Sitarz Aff't ¶¶ 4-8). Defendant argues that production should not be limited to what documents were produced before. (Dkt. #41, at 3-4). This issue will be addressed after the Court's in camera review.

Accordingly, **on or before March 10, 2014**, plaintiff will produce copies of the entire personnel files for Fathers Ferguson, Crowley and Ladamus for the Magistrate Judge's

---

[8]Although plaintiff's brief mentions November 1977 (Dkt. #40, at 8), it should be the terminal date, not the beginning date, that matters, consistent with the two other victims.

in camera review.

B. "SECRET ARCHIVE" OR "CANON 489" FILES (NOS. 21, 41, 61, 74)

The four issues raised are whether these documents are relevant, whether production is precluded by the First Amendment, whether disclosure is barred under CONN. GEN. STAT. § 52-146b, and whether disclosure is prohibited by virtue of the attorney-client privilege and/or work product doctrine. (Dkt. #35, at 11-14; Dkt. #40, at 13-19 & Exh. E; Dkt. #42, at 5-7 & Exh. B). The parties agree that there is no Canon 489 File for Father Ladamus. (Dkt. #35, at 11; Tobin Decl. ¶ 9; Dkt. #40, at 14; McCarthy Aff't ¶ 4).

With respect to these requests, defendant correctly argues that "it is difficult to image a category of documents more relevant to a case centering on an institution's knowledge of, and response to, claims of sexual abuse by three of its employees, than files that exist to chronicle the moral crimes of those employees." (Dkt. #42, at 5). As plaintiff acknowledges, its First Amendment argument was soundly rejected in Dotson, where the Connecticut Superior Court held that "it is difficult for the court to imagine that the compelled disclosure of certain documents that are maintained pursuant to canon law would result in an entanglement of the court in church matters sufficient to result in a violation of the diocese's first amendment rights." 2011 WL 1021745, at *8-9 (citations omitted). As the court held in Dotson with respect to personnel files, the defendant-diocese was permitted to present these documents to the court for an in camera review. Id. at *9. See also Thopsey v. Bridgeport Roman Catholic Diocesan Corp., No. NNH CV 106009360S, 2012 WL 695624, at *8-9, 10-16 (Conn. Super. Ct. Feb. 15, 2012)(reaching same conclusion).

Protection from disclosure under CONN. GEN. STAT. § 52-146b in the context of allegations of sex abuse against minors by members of the clergy has been addressed in

Thopsey, 2012 WL 695624, at *9-10 (following in camera review, some documents found "in some fashion [to] seek religious or spiritual advice, aid or comfort[]" held to be protected from disclosure under the statute), and in Hethcote v. Norwich Roman Catholic Diocesan Corp., No. X04 CV 54003450S, 2007 WL 1121361, at *1 (Conn. Super. Ct. Apr. 3, 2007)(same conclusion reached after in camera review). See also Rosado v. Bridgeport Roman Catholic Diocesan Corp., No. CV 93 302072, 1995 WL 348181, at *10-15 (Conn. Super. Ct. May 31, 1995)(with respect to questions posed to defendant-priest during his deposition, finding common law "priest-penitent" privilege). Plaintiff has represented that once an in camera review has been ordered, it will submit a privilege log that identifies the documents it maintains are protected by the priest-penitent privilege. (Dkt. #40, at 18). Plaintiff similarly represents that it will provide a privilege log with respect to the attorney-client and/or work-product doctrine, in conjunction with the Court's in camera review.

Therefore, **on or before March 10, 2014**, plaintiff shall submit copies of the "secret archives" or "Canon 489" files of Fathers Ferguson and Crowley for this Magistrate Judge's in camera review, along with a privilege log that identifies the documents it maintains are protected by the priest-penitent privilege and another privilege log that identifies the documents that it maintains are protected by the attorney-client and/or work-product doctrine.

Insofar as the parties agree that there is no Canon 489 File for Father Ladamus, plaintiff's motion is denied without prejudice as moot with respect to No. 21. And as previously indicated, plaintiff asserts that it has provided all responsive, non-privileged documents for No. 74. (Dkt. #40, at 24-25; Federico Aff't ¶¶ 20-21; see also Dkt. #42, at 8, n.5). With respect to No. 74, plaintiff shall include for an in camera review copies of any

documents withheld from production on the basis of priest-penitent privilege, attorney-client privilege, or work-product doctrine.

C. DOCUMENTS PERTAINING TO COMMUNICATIONS WITH PLAINTIFF'S PRIMARY INSURERS REGARDING PAYMENT OF THE UNDERLYING CLAIMS (NOS. 3-4, 14-16, 34-36, 54-56, 66-67) [9]

The two issues raised are whether these document are relevant and if so, are they privileged as confidential, as asserted by plaintiff. (Dkt. #35, at 14-19; Dkt. #40, at 19-23; Federico Aff't ¶¶ 16-19, 22; Sitarz Aff't ¶¶ 10-12; Dkt. #42, at 7-10 & Exh. C). Both sides acknowledge that the considerable substantive issues, including whether defendant's excess policies have been triggered here, are to be addressed once discovery has been completed, and not in the midst of discovery. (Dkt. #35, at 17-19; Dkt. #40, at 20-22; Dkt. #42, at 9). Plaintiff asserts that despite its objections, it has "produced all non-privileged communications with other insurers, including all updates on the Underlying Claims that defense counsel routinely sent to the carriers, and documents evidencing communications with other carriers regarding the ultimate settlement." (Dkt. #40, at 19-20; Federico Aff't ¶ 16).

There is little doubt that the documents sought are relevant to the issues raised in this litigation. As U.S. Magistrate Judge William I. Garfinkel recognized in Lamoureux v. Anazaohealth Corp., No. 03 CV 1382 (WIG), 2009 WL 813977, at *2 (D. Conn. Mar. 26, 2009), with respect to a discovery request for "confidential, ongoing, unconsummated settlement discussions[,]" a "substantial need and . . . [a] particularized showing [is] necessary to override the strong policy against production of these materials because of the chilling effect that their production could have on the ongoing settlement negotiations." In

[9]Defendant inadvertently failed to list No. 34 in this section (Dkt. #35, at 14), even though it is included in this category earlier. (Id. at 4-5).

that defendant had failed to meet this high threshold, plaintiffs' motion for protective order was granted and defendant's motion to compel production of these documents was denied. Id.

U.S. Magistrate Judge Holly B. Fitzsimmons reached the same conclusion in Bradley v. Fontaine Trailer Co., Inc., No. 06 CV 62 (WWE), 2007 WL 2028115, at *5 (D. Conn. July 10, 2007). In Bradley, as in this case, plaintiffs did not object to the production of the executed releases and settlement agreements that were the product of the confidential mediation, pursuant to a protective order. Id. at *4. Analogous to the situation here, plaintiffs did object to production of the ex parte settlement statements and materials provided to the mediator. Id. Judge Fitzsimmons had engaged in an in camera review of copious mediation documents before concluding that production was not required under CONN. GEN. STAT. § 52-235d. Id. at *2-5. With respect to FED. R. EVID. 408, Judge Fitzsimmons held that "[t]his rule . . . only applies to the admissibility of evidence at trial, not to discovery." Id. at *6 (citations & internal quotations omitted). Judge Fitzsimmons also engaged in an in camera review of settlement documents in Valiante v. VCA Animal Hosps., Inc., 09 CV 2115 (WWE), 2011 WL 219672, at *1-2 (D. Conn. Jan. 20, 2011), in which she denied defendant production of a settlement agreement between plaintiff and an unrelated third-party, but permitted defendant to inquire from plaintiff at her deposition a description of the injuries that the settlement was intended to redress and any breakdown or allocation of the settlement proceeds to specific injuries or expenses. Id. at *2.

In a similar vein, it would appear, consistent with Bradley and Valiante, that an in camera review of these "confidential" documents would be appropriate. Accordingly, **on or before March 10, 2014**, plaintiff shall provide copies of these documents to this Magistrate

Judge's Chambers for her in camera review.

As previously indicated, plaintiff asserts that it has provided all responsive, non-privileged documents to Nos. 4, 15-16, 35-36, 55-56, 66-67, and 73. (Dkt. #40, at 24-25; Federico Aff't ¶¶ 20-21; see also Dkt. #42, at 8, n.5).[10] With respect to these requests, plaintiff shall include for an in camera review copies of any documents withheld from production on the basis of "confidential" settlement negotiations.

## II. CONCLUSION

Accordingly, for the reasons stated above, defendant's Motion to Compel Production (Dkt. #34) is:

granted in part with respect to Requests for Production Nos. 3-4, 14-16, 19, 34-36, 39, 41, 54-56, 59, 61, 66-67, and 74 to the extent that an in camera review by this Magistrate Judge, consistent with this Ruling, is ordered, with copies to be submitted to this Magistrate Judge's Chambers **on or before March 10, 2014**; and

denied without prejudice as moot with respect to Request for Production No. 21.

This is not a Recommended Ruling, but a ruling on a non-dispositive motion, the standard of review of which is specified in 28 U.S.C. § 636; FED. R. CIV. P. 6(a), 6(e) & 72; and Rule 72.2 of the Local Rules for United States Magistrate Judges. As such, it is an order of the Court unless reversed or modified by the District Judge upon timely made objection.

See 28 U.S.C. § 636(b)**(written objections to ruling must be filed within fourteen calendar days after service of same);** FED. R. CIV. P. 6(a), 6(e) & 72; Rule 72.2 of the Local Rules for United States Magistrate Judges, United States District Court for the District of Connecticut; Small v. Secretary, H&HS, 892 F.2d. 15, 16 (2d Cir. 1989)**(failure**

---

[10]See note 5 supra.

**to file timely objection to Magistrate Judge's recommended ruling may preclude further appeal to Second Circuit).**

Dated at New Haven, Connecticut, this 19th day of February, 2014.

/s/ Joan G. Margolis, USMJ
Joan Glazer Margolis
United States Magistrate Judge