UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| HARTFORD ROMAN CATHOLIC DIOCESAN CORP., <br>   *Plaintiff*, <br>     *v.* <br> INTERSTATE FIRE & CASUALTY CO., <br>   *Defendant*. | Civil No. 3:12cv1641 (JBA) <br><br> January 13, 2015 |

**RULING ON DEFENDANT'S AND PLAINTIFF'S PARTIAL OBJECTIONS TO MAGISTRATE JUDGE'S RULINGS**

Plaintiff and Defendant have both filed partial objections [Doc. ## 41, 50] to discovery rulings [Doc. ## 39, 43] issued by Magistrate Judge Margolis. For the reasons that follow, both objections are overruled.

**I. Background**

This is an action by Hartford Roman Catholic Diocesan Corp. ("RCD") against Interstate Fire & Casualty Co. ("Interstate") alleging breach of contract, breach of the covenant of good faith and fair dealing, and violations of the Connecticut Unfair Insurance Practices Act ("CUIPA") and the Connecticut Unfair Trade Practices Act ("CUTPA") claiming that Interstate wrongfully failed to pay Plaintiff for losses covered by excess liability insurance policies issued by Defendant. Plaintiff has settled four lawsuits brought against it by RM, KS, JA, and Matthew Doe alleging sexual misconduct by clergy affiliated with RCD ("the Underlying Claims"). (Ruling on Pl's Mot. to Compel [Doc. # 39] at 1.) Despite presenting proofs of loss to Defendant, with which it had an insurance contract, Plaintiff has been unable to recover from Defendant for its losses.

(*Id.*)  Plaintiff alleges that Defendant has "made a general business practice" of avoiding its obligations to its insureds. (*Id*. at 4.)

II.  **Legal Standard**

"Matters concerning discovery generally are considered 'nondispositive' of the litigation . . . [and] are committed to the discretion of the magistrate [judge], reviewable by the district court under the 'clearly erroneous or contrary to law' standard."  *Thomas E. Hoar, Inc. v. Sara Lee Corp.*, 900 F.2d 522, 525 (2d Cir. 1990) (citations omitted); *see also* Fed. R. Civ. P. 72(a) (district judge must consider objections to a magistrate judge's ruling on a nondispositive matter "and modify or set aside any part of the order that is clearly erroneous or contrary to law").  Under the clearly erroneous standard, a reviewing court may reverse a finding "only if 'although there is evidence to support it, the reviewing court on the entire evidence is left with definite and firm conviction that a mistake has been committed.'"  *Mobil Shipping & Transp. Co. v. Wonslid Liquid Carriers Ltd.*, 190 F.3d 64, 67–68 (2d Cir. 1999) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)).

III.  **Discussion**

    A.  **Defendant's Objection to the Ruling on Plaintiff's Motion to Compel**

In support of its claim that Defendant has made a "general business practice" of wrongfully denying claims, Plaintiff requested, in relevant part, the following category of documents related to Defendant's handling of claims for Plaintiff and other policyholders:

> 5. [A]ll documents concerning seven claims asserted against the Archdiocese of Hartford by seven claimants other than the claimants at issue in the instant litigation. . . .

> 12. [A]ll documents concerning communications Interstate had with any persons or parties concerning the underlying claims, including but not limited to the Onebane Law Firm.
>
> 13. [A]ll documents relating to the investigation or determination of coverage concerning the underlying claims, including all documentation produced, gathered, and transferred by the Onebane Law Firm, and Attorney McNamara in particular.
>
> 15. [A]ll documents since 1978 concerning claims for coverage based on allegations of childhood sexual abuse against religious entities, made under policies sold by Interstate.
>
> 18. [A]ll documents produced by Interstate in *Corporation of the Catholic Archbishop of Settle v. Interstate Fire & Casualty Co.*, No. 11-00989 (W.D. Wash.).
>
> 19. [A]ll documents produced by Interstate in *Interstate Fire & Casualty Co. v. Catholic Diocese of Phoenix*, No. 2:09-cv-01405 (D. Ariz.).

(Def.'s Obj. to Ruling [Doc. # 41] at 3.)

Plaintiff filed [Doc. # 28] a Motion to Compel the production of documents in response to these and other requests, which was granted [Doc. # 39] in part by Magistrate Judge Margolis. Defendant now objects [Doc. # 41] to three portions of this ruling, contending that: (1) "the Magistrate Judge erred in ordering an *in camera* review of privileged attorney-client documents in response to Requests Nos. 5, 12, 13, 15" (Def.'s Obj. at 1); (2) "the Magistrate Judge erred in ordering production of documents evidencing other policyholders' claims (Request Nos. 15, 18, and 19) by erroneously concluding that the Connecticut Unfair Insurance Practices Act ('CUIPA') includes unfair insurance practices occurring outside the state of Connecticut" (*id.* at 2); and (3) "compliance with the Ruling requiring production of all documents since 2000

concerning claims for coverage based on allegations of childhood sexual abuse against religious entities made under policies sold by Interstate (Request No. 15), presents an extreme and undue burden on Interstate" (*id.*).[1]

### 1. In Camera Review of Requests Nos. 5, 12, 13, and 15

With regard to Request Nos. 5 and 15 (requesting documents related to claims other than the Underlying Claims), Defendant asserts that Magistrate Judge Margolis's Ruling was erroneous because it acknowledged that the documents appeared to be privileged and that Plaintiff had not made the threshold showing required by the Connecticut Supreme Court in *Hutchinson v. Farm Family Casualty Ins. Co.*, 273 Conn. 33 (2005) but then ordered *in camera* review anyway. (Def.'s Obj. at 9.)

*Hutchinson* involved a suit by insureds alleging that their insurer had, in bad faith, made oral misrepresentations to them about its willingness to pay for their losses. The plaintiffs sought discovery of the insurer's claim file, which the insurer asserted was privileged. 273 Conn. at 35–37. The Connecticut Supreme Court adopted a standard similar to the federal standard applied to cases where the crime-fraud exception is claimed, concluding that "an insured who makes an allegation of bad faith against his insurer is entitled to an *in camera* review of privileged materials when the insured has established, on the basis of nonprivileged materials, probable cause to believe that (1) the insurer acted in bad faith and (2) the insurer sought the advice of its attorneys in order to conceal or facilitate its bad faith conduct." *Id.* at 42–43.

---

[1] Request No. 15 originally requested all documents going back to 1978, but the Magistrate Judge concluded that the request was "overbroad" and shortened the start date to 2000. (Ruling on Pl.'s Mot. Compel at 7.)

Defendant contends that by allowing *in camera* review the Magistrate Judge "relieve[d] the Archdiocese of its burden" and Plaintiff obtained such review "simply by making a bald assertion that an exception to the privilege applies." (Def.'s Obj. at 4.) In so arguing, Defendant misconstrues Magistrate Judge Margolis's ruling. The ruling focused primarily on Defendant's overbreadth and irrelevance objections because those were the only grounds advanced in Defendant's Opposition to Plaintiff's Motion to Compel [Doc. # 33]. (*See id.* at 27–32.) Upon finding that the requests were relevant and not overbroad (as narrowed by her ruling), and mindful of Defendant's original objection that the documents were privileged,[2] Magistrate Judge Margolis ordered *in camera* review. Neither the parties nor Magistrate Judge Margolis addressed *Hutchinson* in the context of Requests Nos. 5 and 15 and *Hutchinson* only applies when there is a claimed exception to the attorney-client privilege.

The Magistrate Judge, however, did not purport to require *in camera* review to determine whether an exception to the attorney-client privilege applied but rather ordered *in camera* review "on the issue of [whether] attorney-client privilege, work product doctrine, and/or any other privilege" applied in the first instance. (Ruling on Pl.'s Mot. Compel at 6–7.) Courts have broad discretion to conduct *in camera* review to make this initial determination and the Supreme Court "has long held the view that *in camera* review is a highly appropriate and useful means of dealing with claims of . . . privilege." *Kerr v. U. S. Dist. Court for N. Dist. of California*, 426 U.S. 394, 405–06 (1976);

---

[2] In its response to Plaintiff's production request, Defendant objected on the basis of privilege, among other grounds (*see* Pl.'s Mem. Supp. Mot. Compel [Doc. # 28-1] at 29), but did not advance this argument in its Opposition to Plaintiff's Motion to Compel (*see* Def.'s Opp'n to Pl.'s Mot. Compel at 27–32).

*see also Abrams v. Gen. Elec. Co.*, No. 95-CV-1734 (FJS), 1997 WL 458446, at *2 (N.D.N.Y. Aug. 4, 1997) ("This Court cannot find any authority suggesting that an *in camera* review of documents to determine whether they are privileged is an abuse of discretion.").

As to Requests Nos. 12 and 13 (documents concerning Defendant's communications regarding the Underlying Claims with the Onebane Law Firm), Plaintiff claimed both that the documents were not privileged because the Onebane Law Firm was acting as a claims adjustor rather than an attorney "and even if any privilege did exist, defendant waived any privilege by failing to create a timely privilege log" (Ruling on Pl.'s Mot. Compel at 8) and that Defendant had put the communications "at issue" (Pl.'s Mem. Supp. Mot. Compel [Doc. # 28-1] at 23). From the Magistrate Judge's discussion of these contentions it is clear that she ordered *in camera* review to make the threshold determination as to whether there was any attorney-client privilege to begin with.

Magistrate Judge Margolis discussed extensively three cases that examined in the first instance whether attorney-client communications were privileged where it was alleged that the attorney functioned as a claims adjustor rather than in a legal capacity. *See First Aviation Servs., Inc. v. Gulf Ins. Co.*, 205 F.R.D. 65, 69 (D. Conn. 2001) ("An insurance company may not insulate itself from discovery by hiring an attorney to conduct ordinary claims investigations." (internal quotation marks omitted)); *Mehta v. Ace Am. Ins. Co.*, No. 3:10CV1617 RNC, 2013 WL 3105215, at *2 (D. Conn. June 18, 2013) ("Although defendant's claims specialist was an attorney, the attorney-client privilege does not apply to her work on the claims investigation."); *Tudor Ins. Co. v. McKenna Associates*, No. 01CIV.0115(DAB)(JCF), 2003 WL 21488058, at *3 (S.D.N.Y.

June 25, 2003) ("[C]ommunications between" insurer and counsel retained to dispute insured's entitlement to coverage "that relate to the provision of legal advice are privileged and need not be disclosed.").

In evaluating whether Attorney McNamara and the Onebane Law Firm served as legal advisors or claims adjustors, the Magistrate Judge examined the affidavit of Deborah Sons, Defendant's adjustor for the Underlying Claims.  Noting that "[a]lthough the Sons Affidavit is certainly sketchy about even the most generic functions served by Attorney McNamara and the Onebane Law Firm, plaintiff's counsel concedes that defendant's privilege logs indicates that they were 'involved from the inception of the Underlying Claims'" and thus "under the analysis of the federal courts in *First Aviation, Mehta*, and *Tudor Ins.*, the documents that defendant has not produced appear to be privileged."[3] (Ruling on Pl.'s Mot. Compel at 12.)  Plainly, Magistrate Judge Margolis did not make a final determination that the documents were privileged but rather just determined that they "appeared" to be and that *in camera* review was required to confirm this appearance, a conclusion that is reinforced by her discussion of *First Aviation, Mehta*, and *Tudor Ins.*

After conducting this analysis of whether the privilege applied in the first instance, Magistrate Judge Margolis also discussed *Hutchinson* in relation to Plaintiff's claimed *exceptions* to the attorney-client privilege and concluded that "plaintiff has not satisfied the threshold necessary for disclosure of these documents" and that "the *Hutchinson* decision does not require an *in camera* review at this point" but "in an abundance of

---

[3] Plaintiff contends that the Magistrate Judge "misinterpreted" its argument and that the fact that Interestate's attorneys were involved immediately after Plaintiff's claims were filed "suggests that they acted in a claims handing capacity."  (Pl.'s Opp'n to Def.'s Obj. at 22 & n.17.)

caution, the Magistrate Judge is willing to conduct an *in camera* review of the disputed documents." (Ruling on Pl.'s Mot. Compel at 12–13.) While Defendant is correct that Plaintiff would not be entitled to *in camera* review of privileged documents under *Hutchinson* without establishing "probable cause" that an exception to the attorney-client privilege might apply, the Magistrate Judge separately concluded that *in camera* review was required to determine in the first instance whether a privilege applied. As Defendant concedes, "*in camera* review may be used to determine whether allegedly privileged attorney-client communications are entitled to protection." (Def.'s Obj. at 4.) The Magistrate Judge recognized *Hutchinson*'s "threshold" requirement (Ruling on Pl.'s Mot. Compel at 12) and the fact that doubts lingered as to whether a potential exception to the privilege could apply does not make it improper to review *in camera* documents for the concededly appropriate purpose of determining in the first instance whether an exception applied.

     2.  *CUIPA's Coverage of Practices Occurring Outside Connecticut (Requests Nos. 15, 18, and 19)*

Next, Defendant contends that the Magistrate Judge erred in requiring the production of documents evidencing other policyholders' claims by "erroneously concluding that [CUIPA] includes unfair insurance practices occurring outside the state of Connecticut." (Def.'s Obj. at 2.) Plaintiff sought such evidence in support of its claim that Defendant had made a "general business practice to avoid its obligations" to insureds and had "engaged in similar unfair tactics with at least two other insureds" in Washington State and Massachusetts. (Ruling on Pl.'s Mot. Compel at 4 (quoting Pl.'s Mem. Supp. Mot. Compel).) Defendant objected to this request on the basis that CUIPA

applied only to violations that occurred in Connecticut and barred discovery of out-of-state claims.  (*Id.* at 5.)

To assert such a violation of CUIPA, Plaintiff must show "that the insurer has engaged in unfair claim settlement practices with such frequency as to indicate a general business practice." *Beck v. Utica Mut. Ins. Co.*, No. CV116022761, 2013 WL 3388880, at *6 (Conn. Super. Ct. June 18, 2013) (internal quotation marks omitted); Conn. Gen. Stat. § 38a-816(6).  The Magistrate Judge noted while CUTPA "'proscribes only unfair trade practices occurring with the state of Connecticut,' there appears to be no such restriction with respect to claims under CUIPA" and while Defendant cited some contrary authority, "the more current view appears to permit such discovery." (Ruling on Pl.'s Mot. Compel at 6 (quoting *Western Dermatology Consultants, P.C. v. VitalWorks, Inc.*, 146 Conn. App. 169, 200–01 (Conn. App. Ct. 2013)).[4]

Defendant contends that the general language of CUIPA that "[n]o person shall engage *in this state* in any trade practice which is defined in section 38a-816," Conn. Gen. Stat. § 38a-815 (emphasis added), compels the conclusion that CUIPA, like CUTPA, applies only to in-state conduct.  The Court is not persuaded.  Among the unfair trade practices prohibited by CUIPA are "[u]nfair claim settlement practices" that occur "with such frequency as to indicate a general business practice." Conn. Gen. Stat. § 38a-816(6).  By "requiring proof that the insurer has engaged in unfair claim settlement practices 'with such frequency as to indicate a general business practice,' the legislature has manifested a clear intent to exempt from coverage under CUIPA isolated instances of insurer

---

[4] On December 4, 2013, the Connecticut Supreme Court granted certiorari in *Western Dermatology*, *see* 310 Conn. 955 (2013), but it has not yet issued a ruling.

misconduct." *Lees v. Middlesex Ins. Co.*, 229 Conn. 842, 849 (1994) (footnote omitted). While § 38a-815 requires that the alleged "unfair claim settlement practice[]" occur in Connecticut, nothing in § 38a-816(6) requires that evidence relevant to whether a plaintiff's injury was part of a general business practice be confined to Connecticut only. Rather, instances of alleged unfair trade practices from outside the State are relevant to proving that an in-State plaintiff was the victim of the culpable conduct that CUIPA was intended to combat instead of an isolated instance of misconduct exempted from CUIPA. *See Southridge Capital Mgmt., LLC. v. Twin City Fire Ins. Co.*, No. X04 CV-02-103527S, 2005 WL 1671549, at *4 (Conn. Super. Ct. June 3, 2005) (denying motion to strike where "the defendant's alleged wrongful conduct has occurred in Connecticut and other jurisdictions with such frequency as to indicate a general business practice"). That a general insurance practice includes manifestations from outside of Connecticut does not lessen the culpability of a defendant's in-State conduct. Accordingly, the Court concludes that CUIPA applies so long as the alleged violation asserted in this case occurred in Connecticut even though proof of a "general business practice" includes conduct that occurred outside Connecticut, and therefore Defendant's objection is overruled.

        3.       *Burden of Complying with Request No. 15*

Finally, Defendant contends that the Magistrate Judge erred in requiring the production of all documents since 2000 "concerning claims for coverage based on allegations of childhood sexual abuse against religious entities, made under policies sold by" Defendant. (Request No. 15.) Plaintiff originally requested the production of such documents since 1978, however, the Magistrate Judge concluded that the request was "overbroad" and thus limited it to 2000 (and as discussed above, required *in camera*

review for privilege). (Ruling on Pl.'s Mot. Compel at 7.) Defendant contends that the Magistrate Judge erred in not imposing further limitations. In support of this contention, Defendant submits to this Court for the first time the Affidavit of Deborah Sons[5] outlining the claimed burden from complying with this request, which would require compiling and reviewing approximately 1700 claim files.[6] (Sons Aff., Ex. B [Doc. # 41-2] to Def.'s Obj. ¶ 5.)

While a "party may object to a request if it is 'overly broad' or 'unduly burdensome,' it "must do more than simply intone the familiar litany that the [request is] burdensome, oppressive or overly broad. Instead, the objecting party bears the burden of demonstrating specifically how, despite the broad and liberal construction afforded the federal discovery rules, each request is not relevant or how each question is overly broad, burdensome or oppressive by submitting affidavits or offering evidence revealing the nature of the burden." *Culkin v. Pitney Bowes, Inc.*, 225 F.R.D. 69, 70–71 (D. Conn. 2004) (internal citations, quotation marks and alterations omitted).

In its Opposition to Plaintiff's Motion to Compel, Defendant argued both that the requested documents were not relevant and that the request was overbroad. Defendant relied primarily on the first argument, which as discussed above, was rejected, and stated in a footnote: "Should the Court conclude that these other insured documents are

---

[5] This affidavit is distinct from the Sons Affidavit submitted to the Magistrate Judge in support of Defendant's assertion of privilege for Requests Nos. 12 and 13.

[6] Plaintiff has now offered to narrow this request to include only those claims since 2000 in which settlements or verdicts "reached Interstate's layer" of excess coverage. (Pl.'s Opp'n to Def.'s Obj. [Doc. # 48] at 14–15.) Defendant contends that this limitation does not ease the burden, because it has "no mechanism . . . to identify and segregate" such claims from the 1700 claims in this timeframe. (Def.'s Reply at 7.)

11

relevant, Interstate reserves the right to submit a burden affidavit." (Def.'s Opp'n to Pl.'s Mot. Compel [Doc. # 33] at 30 n.9.) However, it submitted no such evidence to the Magistrate Judge.

While Rule 72(b) regarding objections to a magistrate judge's recommended rulings allows the district court to "receive further evidence" in order to conduct *de novo* review, Rule 72(a) provides no such authority and states only that "[t]he district judge in the case must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Based on the absence of explicit authority to consider additional evidence under Rule 72(a), some courts have questioned whether the district court may do so. *See, e.g., State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 375 F. Supp. 2d 141, 158 (E.D.N.Y. 2005) ("[T]he Court has not found [a case], in which Rule 72(a) objections are sustained based on evidence not presented to the magistrate judge.").

However, a court has broad power to reconsider its own prior rulings or the rulings of a prior judge when a case is transferred. While under the law of the case doctrine such authority is rarely exercised,[7] given this inherent authority of the court "a district judge should have at least the authority to consider further evidence in reviewing rulings on nondispositive matters." 12 Wright & Miller Fed. Prac. & Proc. Civ. § 3069 (2d ed. 2014).

---

[7] *See Hill v. BASF Wyandotte Corp.*, 696 F.2d 287, 290 n.3 (4th Cir. 1982) ("[W]hether rulings by one district judge become binding as 'law of the case' upon subsequent district judges is not a matter of rigid legal rule, but more a matter of proper judicial administration which can vary with the circumstances. It may sometimes be proper for a district judge to treat earlier rulings as binding, sometimes not.").

Nevertheless given that the district court functionally operates as an appellate tribunal under Rule 72(a), such discretion should rarely be exercised. *See United States v. Caro*, 461 F. Supp. 2d 478, 480 (W.D. Va. 2006) *aff'd*, 597 F.3d 608 (4th Cir. 2010) ("While review of a magistrate judge's decision on nondispositive motions does not normally permit the admission of evidence not considered by the magistrate judge, the district judge has the discretion to do so."); *see also Ritchie Risk-Linked Strategies Trading (Ireland), Ltd. v. Coventry First LLC*, 282 F.R.D. 76, 78 (S.D.N.Y. 2012) ("Under this highly deferential standard of review, magistrates are afforded broad discretion in resolving [nondispositive] disputes and reversal is appropriate only if their discretion is abused." (internal quotation marks omitted)).

Defendant contends that it is procedurally proper for it to submit evidence regarding its discovery burden for the first time to this Court on the basis of its footnote reserving the right to do so. (Def.'s Reply [Doc. # 54] at 4.) However, a party cannot unilaterally override the Court's delegation of authority to the Magistrate Judge to rule on discovery motions to promote just and efficient case management nor place upon the Magistrate Judge the onus to request such evidence before issuing its ruling. *Cf. Texas v. United States*, No. CV 11-1303 (RMC), 2014 WL 2758597, at *11 (D.D.C. June 18, 2014) ("[T]he onus . . . is not on the Court to request opposition from a sophisticated party before rendering its decision."). Accordingly, the Court declines to consider the affidavit submitted for the first time with its objection and Defendant's objections are overruled.

### B. Plaintiff's Objection to the Ruling on Defendant's Motion to Compel

Defendant filed its own Motion to Compel, which, in relevant part, sought documents pertaining to Plaintiff's communications with its primary insurers regarding

13

the Underlying Claims.  (Def.'s Req. for Production Nos. 3, 14, 34, 54.)  Magistrate Judge Margolis concluded that two issues were raised by the requests: (1) whether the requested documents were relevant and (2) "if so, are they privileged as confidential as asserted by the plaintiff."  (Ruling on Def.'s Mot. Compel [Doc. # 43] at 9.)  The Magistrate Judge concluded that there was "little doubt that the documents sought are relevant to the issues raised in this litigation" and ordered *in camera* review of the documents to evaluate the second issue.  (*Id.* at 9–10.)

Plaintiff now objects [Doc. # 50] to this portion of the Magistrate Judge's ruling, contending that Defendant failed to make a threshold showing of relevance to justify *in camera* review.  As to the first issue, Defendant contends that documents are relevant in support of its affirmative defense that Plaintiff failed to exhaust its primary coverage and thus Defendant as an excess liability provider was not obligated to provide coverage.  (Def.'s Opp'n to Pl.'s Obj. [Doc. # 57] at 4 (citing Def.'s Answer [Doc. # 16] Second Affirmative Defense).)  Plaintiff maintains that the requested documents are not relevant because the Court will determine Defendant's coverage obligation as a matter of contractual interpretation and Plaintiff has already disclosed "documents evidencing the Archdiocese's full payment of the Underlying Claims as evidence of exhaustion."  (Pl.'s Obj. 9–10.)

However, Defendant notes several relevant questions that remained unanswered by Plaintiff's production.  First, some of the payments were for groups of claims and cannot be matched up with specific claims absent further documentation regarding the negotiation of specific settlements.  Second, given that Defendant's policy is a follow-form policy with the same terms as the underlying policies, if the primary insurers did not pay

14

the full policy limits; this denial could be relevant to Defendant's obligations pursuant to its policy with the same terms. Finally, the communications may demonstrate that material information regarding the Underlying Claims were provided to the primary insurers but withheld from Defendant, which would support its affirmative defenses alleging a lack of cooperation by Plaintiffs. (Def.'s Opp'n to Pl.'s Obj. at 5–6; Def.'s Ans. Second & Fourth Affirmative Defenses.) Thus, the Magistrate Judge did not err in concluding that these documents were relevant.

Plaintiff next contends that the Magistrate Judge erred in requiring *in camera* review of these documents because they were "confidential settlement communications" between Plaintiff and the primary carriers and Defendant failed to make "the threshold showing of substantial need." (Pl.'s Obj. at 3.) The fact that documents are "confidential" does not provide a basis for resisting disclosure. *See* Fed. R. Civ. P. 26(b)(1) ("[T]he scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . .").[8]

Both before the Magistrate Judge and in this objection, Plaintiff cites decisions discussing Fed. R. Evid. 408, which provides that certain statements made in settlement negotiations are not admissible at trial for certain purposes. However, the "rule says nothing about whether offers of compromise are discoverable; it speaks only to their admissibility." *In re Initial Pub. Offering Sec. Litig.*, No. 21 MC 92 (SAS), 2004 WL 60290,

---

[8] While confidential or sensitive documents are not privileged from production, if a party "desires protection it [can] seek a protective order under Rule 26(c)" and the "district court has broad discretion to determine whether an order should be entered protecting a party from disclosure of information claimed to be . . . confidential." *Penthouse Int'l, Ltd. v. Playboy Enterprises, Inc.*, 663 F.2d 371, 391 (2d Cir. 1981).

at *4 (S.D.N.Y. Jan. 12, 2004). "Instead, Rule 26(b)(1) of the Federal Rules of Civil Procedure sets the general standard for discovery. Prevailing authority within this Circuit holds that the discovery of settlement-related information is governed by this rule, and that no heightened showing of relevance need be made in order to justify the disclosure of a settlement agreement." *Valiante v. VCA Animal Hospitals, Inc.*, No. 3:09CV2115 WWE, 2011 WL 219672, at *2 (D. Conn. Jan. 20, 2011) (internal quotation marks omitted). Under Rule 26(c), "[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."

Given that no plausible privilege was asserted, it appears that the Magistrate Judge ordered *in camera* review to confirm the relevancy of the documents and for the purpose of determining whether the documents were discoverable under Rule 26(c), i.e., whether they were either admissible or "reasonably calculated to lead to the discovery of admissible evidence." *See, e.g., Valiante,* 2011 WL 219672, at *2 ("Upon an *in camera* review of the settlement agreement, the Court concludes that the production of the settlement agreement would not lead to admissible evidence."). As Plaintiff noted in its Opposition to Defendant's Objection to producing allegedly privileged documents, courts

have broad discretion to order *in camera* review to make a threshold determination of whether a document is discoverable.[9] (Pl.'s Opp'n to Def.'s Obj. at 21–22.)

### IV.     Conclusion

For the reasons set forth above, the partial objections [Doc. ## 41, 50] are OVERRULED and the parties shall promptly submit to Magistrate Judge Margolis all documents that she has ordered be submitted for *in camera* review.

IT IS SO ORDERED.

    /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 13th day of January, 2015.

---

[9] While as noted above, the majority of courts in this Circuit do not require a heightened showing of relevance to justify the disclosure of documents related to settlement negotiations, *Valiante*, 2011 WL 219672, at *2, some "courts have been reluctant to order the production of documents relating to *ongoing settlement* negotiations, absent a showing of substantial need or, at a minimum, a particularized showing of the relevance of such documents," *Lamoureux v. Anazaohealth Corp.*, No. 3:03CV01382(WIG), 2009 WL 813977, at *2 (D. Conn. Mar. 26, 2009) (emphasis added). Defendant does not seek documents related to ongoing settlement negotiations and even if it did, Plaintiff has not cited any cases holding that such a particularized showing is required before a court can conduct *in camera* review. For example, in *King Cnty., Wash. v. IKB Deutsche Industriebank AG*, No. 09 CIV. 8387 SAS, 2012 WL 3553775, at *1 (S.D.N.Y. Aug. 17, 2012), cited by Plaintiff, the court conducted *in camera* review of the settlement documents before ordering that they need not be produced because they were not relevant.