UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THE HARTFORD ROMAN CATHOLIC DIOCESAN CORPORATION | : : : | |
| | : | CIVIL ACTION NO. 3:12-CV-01641 (JBA) |
| Plaintiff | : : | |
| v. | : : | |
| INTERSTATE FIRE & CASUALTY COMPANY | : : : | |
| Defendant. | : : | AUGUST 31, 2015 |

**DEFENDANT INTERSTATE FIRE & CASUALTY
COMPANY'S MEMORANDUM IN SUPPORT OF ITS MOTION
<u>FOR SUMMARY JUDGMENT</u>**

Rhonda J. Tobin (ct07755)
Stephen O. Clancy (ct27617)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT  06103-3597
Tel. No. (860) 275-8200
Fax No. (860) 275-8299
Email: rtobin@rc.com

Attorneys for Defendant
Interstate Fire & Casualty Company

# TABLE OF CONTENTS

Page

INTRODUCTION........................................................................................................................ 1

FACTUAL BACKGROUND....................................................................................................... 2

A.    The Archdiocese's Insurance Program ...................................................................... 2

B.    The Underlying Claims................................................................................................ 4

           *1.*    *RM Claim* ...................................................................................................... 4

           *2.*    *KS Claim* ....................................................................................................... 5

           *3.*    *JA Claim*........................................................................................................ 6

           *4.*    *Matthew Doe Claim* .................................................................................... 6

C.    The Lawsuit .................................................................................................................. 8

APPLICABLE LEGAL STANDARDS ..................................................................................... 9

A.    Summary Judgment Standard ................................................................................... 9

B.    Insurance Policy Interpretation................................................................................. 9

ARGUMENT................................................................................................................................ 11

I.    THE ASSAULT AND BATTERY EXCLUSION BARS COVERAGE FOR THE
     UNDERLYING CLAIMS ................................................................................................ 11

     A.    The Ninth Circuit Court of Appeals Decision Interstate Fire &
           Casualty Co v. Roman Catholic Church of Phoenix................................ 12

     B.    Connecticut Law Supports The Same Conclusion Reached by The
           Ninth Circuit. .......................................................................................... 14

II.    BECAUSE INTERSTATE IS ENTITLED TO SUMMARY JUDGMENT AS TO
     THE BREACH OF CONTRACT COUNT, IT IS ALSO, AS A MATTER OF
     LAW, ENTITLED TO SUMMARY JUDGMENT AS TO THE BAD FAITH
     AND CUIPA/CUTPA COUNTS...................................................................................... 18

CONCLUSION............................................................................................................................. 22

# TABLE OF AUTHORITIES

## Cases

*Anderson v. Liberty Lobby*, 477 U.S. 242, 91 L. Ed. 2d 202, 106 S.Ct. 2505 (1986) ..................... 9

*Bahre v. Hogbloom*, 162 Conn. 549, 295 A.2d 547 (1972) ............................................................ 17

*Buell Indus. v. Greater N.Y. Mut. Ins. Co.*, 259 Conn. 527, 791 A.2d 489 (2002) ................. 10, 18

*Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 67 A.3d 961 (2013) ......... 18, 21

*Celotex Corp. v. Catrett*, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S.Ct. 2548 (1986) ....................... 9

*Chorches v. Stewart Title Guaranty Co.*, 48 F. Supp. 3d 151 (D. Conn. 2014) ............................ 19

*Community Action v. American Alliance Insurance Company*, 254 Conn. 387, 757 A.2d 1074
    (2000) ...................................................................................................................... 10, 15

*Coregis Ins. Co. v. Lyford*, 21 F. Supp. 2d 695 (S.D. Tex. 1998) ................................................ 16

*Flint v. Universal Mach. Co.*, 238 Conn. 637, 679 A.2d 929 (1996) .............................................. 9

*Hammer v. Lumberman's Mut. Cas. Co.*, 214 Conn. 573, 573 A.2d 699 (1990) ............ 10, 15, 18

*Interstate Fire & Casualty Co v. Roman Catholic Church of Phoenix*, 761 F.3d 953 (9th Cir.
    2014) ............................................................................................................................. passim

*Interstate Fire & Casualty Co v. Roman Catholic Church Phoenix*, No. 09-01405-PHX-NVW,
    2011 WL 587163 (D. Conn. Feb. 8, 2011) ................................................................................ 12

*LaProvidenza v. State Employees' Retirement Commission*, 178 Conn. 23, 420 A.2d 905 (1979)
    ............................................................................................................................... 16, 17

*Matsushita Electric Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 89 L. Ed. 2d 538, 106 S. Ct.
    1348 (1986) .................................................................................................................................. 9

*McCarthy v. Travelers Indemnity Company*, Docket No. CV 970345443, 2000 WL 372801
    (Conn. Super. Ct. March 29, 2000) (*Melville, J.*) ..................................................................... 19

*McCauley v. N.H. Ins. Co.*, 716 F. Supp. 718 (D. Conn. 1989) ............................................. 15, 17

*McWeeny v. City of Hartford*, 287 Conn. 56, 946 A.2d 862 (2008) .............................................. 16

*Mount Vernon Fire Ins. v. Morris*, Docket No. CV-02-0173643S, 2004 WL 1730133, (Conn.
    Super. Ct. July 1, 2004), *aff'd*, 90 Conn. App. 525, 887 A.2d 910 (2005), *cert. denied*, 281
    Conn. 544, 917 A.2d 538 (2007) ......................................................................................... 12, 15

*Murphy v. Allied World Assur. Co. (U.S.)*, 370 Fed. Appx. 193 (2d Cir. 2010) ........................... 15

*Nat'l Grange Mut. Ins. Co. v. Santaniello*, 290 Conn. 81, 961 A.2d 387 (2009) ................... 10, 11

*Nichols v. Warren*, 209 Conn. 191, 550 A.2d 309 (1988) ............................................................ 17

*Patrons Mutual Ins. Co. v. Maguire*, Docket No. CV-95-374329, 1997 WL 162821 (Conn.
    Super. Ct. March 26, 1997) (*McMahon, J.*) .............................................................................. 19

*Rancourt v. Allstate Ins. Co.*, Docket No. CV-06-5001222, 2008 WL 5255560 (Conn. Super. Ct.
    December 1, 2008) (*Abrams, J.*) ............................................................................................... 20

*Ridley v. National Union Fire Ins. Co. of Pittsburgh*, No. 3:11-CV-1713-WWE, 2014 WL
    3687739 (D. Conn., July 22, 2014) ...................................................................................... 19, 20

*Royal Indem. Co. v. King*, 532 F. Supp. 2d 404 (D. Conn. 2008) ................................................ 21

*Sales v. State Farm Fire and Cas. Co.*, 849 F.2d 1383 (11th Cir. 1988) ..................................... 15

*Spartan Petroleum Co. v. Federated Mut. Ins. Co.*, 162 F.3d 805 (4th Cir. 1998) ..................... 14

*Sponzo v. Hartford Underwriters Ins. Group*, Docket No. CV-5433134, 1996 WL 155384 (Conn.
    Super. Ct. March 15, 1996) (*Aurigemma, J.*) ........................................................................... 19

*TIB Specialty Ins. Co. v. Pinkmonkey.com Inc.*, 375 F.3d 365 (5th Cir. 2004) ........................... 14

*United National Ins. Co. v. Waterfront New York Realty Corp.*, 994 F.2d 105 (D. Conn. 1993) 12

*Vincenzi v. Nationwide Mutual Ins. Co.*, Docket No. CV-337630, 1997 WL 80672 (Conn. Super. Ct. February 6, 1997) (*Skolnick, J.*) .................................................................................... 19, 20

*Wright v. State Farm Mutual Automobile Ins. Co.*, Docket 960561270, 1997 WL 746434 (Conn. Super. Ct. Nov. 18, 1997) (*Aurigemma, J.*) ............................................................................ 20

*XL Specialty Ins. Co. v. Agoglia*, No. 08 Civ. 3821, 2009 WL 1227485 (S.D.N.Y. Mar. 2, 2009) .................................................................................................................................................. 16

## Statutes

Conn. Gen. Stat. § 18-7a (c) ..................................................................................................... 17

Conn. Gen. Stat. § 2288c ........................................................................................................... 17

Conn. Gen. Stat. § 38a-815 et seq. ............................................................................................ 20

Conn. Gen. Stat. § 38a-816 ................................................................................................. 20, 21

Conn. Gen. Stat. § 46a-60 .......................................................................................................... 16

Conn. Gen. Stat. § 7-436 (a) ..................................................................................................... 16

Fed. R. Civ. P. 56 ......................................................................................................................... 9

## Other Authorities

*Webster's Third New International Dictionary* 2283 (2002) ...................................................... 13

## INTRODUCTION

In this insurance coverage dispute, Plaintiff The Hartford Roman Catholic Diocesan Corporation (the "Archdiocese") seeks reimbursement from Defendant Interstate Fire & Casualty Company ("Interstate") for monies expended by the Archdiocese in connection with defending and settling claims brought by four individuals who allege to have been sexually assaulted as children by priests of the Archdiocese. The Interstate Policies under which the Archdiocese claims entitlement to coverage are a series of excess level liability indemnity policies. As such, these policies do not include a duty to defend the Archdiocese or its priests in connection with the underlying sex abuse claims. Moreover, because the Interstate Policies are excess level indemnity policies, they are not triggered, if at all, until after the Archdiocese actually pays an underlying liability that exceeds Interstate's layer of coverage, complies with the relevant policy provisions and exhausts its self-insured retention and the underlying layer of insurance. Of particular significance to the present motion is the fact that the Interstate Policies "follow form" with the underlying policies provided by Underwriters at Lloyd's, London ("Lloyd's Policies"). It is the Assault and Battery Exclusion contained within the underlying Lloyd's Policies which is the focus of this motion and which bars coverage for the Underlying Claims.

Interstate is entitled to summary judgment as to all counts of the Archdiocese's Complaint for the following reasons. First, summary judgment should be granted as to Count One (Breach of Contract) because the Interstate Policies do not apply to "liability of **any Assured** for assault and battery committed by or at the direction of **such Assured** . . . ." (emphasis added). As the Ninth Circuit Court of Appeals recently held in

*Interstate Fire & Casualty Co v. Roman Catholic Church of Phoenix*, 761 F.3d 953 (9th Cir. 2014), this exact exclusion applies to the types of claims at issue in the present case and categorically excludes coverage for both the insured who committed or directed the assault and battery as well as any other Assureds.

Second, assuming the Court grants summary judgment as to Count One, then it must also grant summary judgment as to Counts Two (Breach of the Covenant of Good Faith and Fair Dealing) and Three (Violation of CUIPA/CUTPA) of the Complaint because, in Connecticut, whenever an insurer is found to have no obligation to pay under an insurance policy, its refusal to do so cannot provide the basis for extra-contractual claims.

## FACTUAL BACKGROUND

### A.     The Archdiocese's Insurance Program

The Archdiocese was insured under a series of excess level liability indemnity policies issued by Interstate during the period of September 1, 1978 through September 1, 1985 (the "Interstate Policies"). (*Defendant's Statement of Undisputed Material Facts Pursuant to Local Rule 56 (a) 1* ("*SOF*"), ¶ 1). The Interstate Policies were part of a multi-layered insurance program commonly referred to as the Bishop's Plan and procured by the Archdiocese through Arthur J. Gallagher & Co. (Illinois) in order to provide, among other things, excess liability indemnity coverage against third-party claims. (*Id.*, at ¶ 2). The Interstate Policies only "indemnify the insured for the amount of loss which is in excess of the applicable limits of liability of the underlying insurance" and represent the backstop of the Archdiocese's insurance program. (*Id.*, at ¶ 3). During the relevant policy periods, the Interstate Policies were excess to not only a self-insured retention

2

maintained by the Archdiocese ("SIR"), but also a layer of primary insurance coverage provided by Lloyds and various other insurers and Centennial Insurance Company ("Centennial").[1] (*Id.*, at ¶ 4). Given that the Interstate Policies are *indemnity policies*, they do not include a duty to defend the Archdiocese or its priests in connection with the underlying sex abuse claims. (*Id.*, at ¶ 5). Moreover, given that the Interstate Policies are *excess level indemnity policies*, they are not triggered, if at all, until after the Archdiocese actually pays an underlying liability that exceeds Interstate's layer of coverage, complies with all policy conditions and exhausts its self-insured retention and any underlying layers of insurance. (*Id.*, at ¶ 6).[2]

Except where otherwise provided, the Interstate Policies "follow form" with the underlying Lloyd's Policies. (*Id.*, at ¶ 7).

> The provisions of the immediate underlying policy or Incorporated as part of this policy except for any obligation to investigate and defend and pay for costs and expenses incident to same, the amount of the limits of liability, any "other insurance" provision and any other provisions therein which are inconsistent with the provisions of this policy. Consequently, it is the provisions of the Lloyd's Policies that are the subject of the present motion.

The Insuring Agreement in the Lloyd's Policies states:

## SECTION II – CASUALTY INSURANCE

## INSURING AGREEMENTS

**AGREEMENT C - GENERAL LIABILITY:** Underwriters hereby agree, subject to the limitations, terms and conditions hereunder mentioned, to indemnify the Assured for all sums which the Assured shall be obligated to pay by reason of the liability imposed upon the Assured by

---

[1]  The Archdiocese's SIR varied from $60,000 to $100,000 depending on policy year. The underlying insurers provided coverage above the SIR up to $200,000. (*SOF,* at ¶ 4 n.1).

[2]  The Archdiocese disputes the exhaustion requirement, but that dispute is not material to this Motion For Summary Judgment.

3

law or assumed by the Named Assured under contract or agreement, for damages direct or consequential, and expenses, all as more fully defined by the term "ultimate net loss", on account of personal injuries ... arising out of any occurrence happening during the period of Insurance.

(*Id.*, at ¶ 8). The term "Assured" includes the Archdiocese and, among others, "any official, trustee or employee of [the Archdiocese] while acting within the scope of his duties as such . . . ." (*Id.*, at ¶ 9).

The Lloyd's Policies also contain the following Assault and Battery Exclusion:

## THIS INSURANCE DOES NOT APPLY –

(a)     to liability of any Assured for assault and battery committed by or at the direction of such Assured except liability for Personal Injury or Death resulting from any act alleged to be assault and battery for the purpose of preventing injury to persons or damage to property;
. . .

(*Id.*, at ¶ 10).

### B.     The Underlying Claims

The claims at issue in the present litigation were brought by RM, KS, JA and Matthew Doe ("Underlying Claimants"), each of whom claim to have been sexually assaulted by priests of the Archdiocese. ("Underlying Claims"). The Underlying Claims are discussed in relevant part below.

#### 1.     *RM Claim*

The Archdiocese, through its attorney, John W. Sitarz, notified Interstate of a "new sexual abuse claim" by way of a letter dated August 30, 2006 enclosing a letter from RM's counsel in which he detailed the sexual abuse RM claimed to have suffered at the hands of Father Ivan Ferguson. (*Id.*, at ¶ 11). Similarly, on December 7, 2006, Gallagher Bassett Insurance Services ("Gallagher Bassett"), acting as the third party administrator of the Archdiocese's insurance program, sent an Initial Notification Letter

4

again detailing the various sexual "assaults" being claimed by RM. (*Id.*, at ¶ 12). Thereafter, on or about October 7, 2007, RM filed a two-count Complaint against the Archdiocese alleging negligence and reckless and wanton conduct. (*RM v. The Hartford Roman Catholic Diocesan Corporation*, Docket No. UWY-CV-07-5007642-S, Superior Court, Complex Litigation Docket, at Waterbury) (*Id.*, at ¶ 13). Sexual abuse by Father Ferguson was a central factual element common to each count. (*Id.*, at ¶ 14).

On August 4, 2010, the Archdiocese reached a settlement with RM whereby, in exchange for settlement monies, RM agreed to "release and forever discharge The Hartford Roman Catholic Diocesan Corporation ("Archdiocese of Hartford") and all of its past, present and future Archbishops, Bishops, Auxiliary Bishops, Priests, including but not limited to ***Rev. Ivan Ferguson***, . . . , from any and all manner of liability . . . including but not limited to all matters arising out of or relating to ***alleged sexual misconduct*** as alleged in a certain civil action entitled: **[RM] v. The Hartford Roman Catholic Diocesan Corporation** . . . ." (*Id.*, at ¶ 15) (emphasis added).

### 2. *KS Claim*

The Archdiocese, through Attorney Sitarz, notified Interstate of a "new, clergy sexual-abuse claim" by way of a letter dated October 31, 2007, enclosing a letter received from KS's counsel in which he detailed the sexual abuse KS claimed to have suffered at the hands of Father Stephen Crowley. (*Id.*, at ¶ 16). Thereafter, on November 21, 2007, Gallagher Bassett sent an Initial Notification Letter regarding the claim. (*Id.*, at ¶ 17). Subsequently, on January 26, 2011, the Archdiocese reached a settlement with KS whereby KS agreed, in exchange for settlement monies, to "release and forever discharge The Hartford Roman Catholic Diocesan Corporation ("Archdiocese of

Hartford") and all of its past, present and future Archbishops, Bishops, Auxiliary Bishops, Priests, including but not limited to *Rev. Stephen Crowley*, . . . , from any and all manner of liability . . . in any way connected with certain *alleged incidents of clergy sexual misconduct and assaults* allegedly occurring in the State of Connecticut in and about the fall of 1981 to the Spring of 1982." (*Id.*, at ¶ 18) (emphasis added).

### 3. *JA Claim*

The Archdiocese, through Attorney Sitarz, notified Interstate of a new claim alleging "abuse" by way of a letter dated June 5, 2008, enclosing a letter received from JA's counsel in which he detailed the sexual abuse KS claimed to have suffered at the hands of Father Robert Ladamus. (*Id.*, at ¶ 19). Thereafter, on June 13, 2008, Gallagher Bassett sent an Initial Notification Letter again detailing the sexual "assaults" being claimed by JA. (*Id.*, at ¶ 20). On February 15, 2012, the Archdiocese reached a settlement with JA whereby JA agreed, in exchange for settlement monies, to "release and forever discharge The Hartford Roman Catholic Diocesan Corporation ("Archdiocese of Hartford") and all of its past, present and future Archbishops, Bishops, Auxiliary Bishops, Priests, including but not limited to *Rev. Robert Ladamus*, . . . , from any and all manner of liability . . . in any way connected with certain *alleged incidents of clergy sexual misconduct and assaults* allegedly occurring in the State of Connecticut in and about the 1980's." (*Id.*, at ¶ 21) (emphasis added).

### 4. *Matthew Doe Claim*

The Archdiocese, through Attorney Sitarz, notified Interstate of the Matthew Doe claim by way of a letter dated June 27, 2008, enclosing a May 28, 2008 Complaint filed against the Archdiocese and detailing the sexual abuse Matthew Doe claimed to have

suffered at the hands of Father Ivan Ferguson. (*Matthew Doe v. The Hartford Roman Catholic Diocesan Corporation, a/k/a The Roman Catholic Archdiocese of Hartford*, UWY-CV-08-5010716-S, Superior Court, Complex Litigation Docket, at Waterbury) (*Id.*, at ¶ 22). The two-count Complaint alleged negligence and reckless and wanton conduct. (*Compl.*, at ¶ 23). As with the RM claim, sexual abuse by Father Ferguson was a factual element common to each count. (*Id.*, at ¶ 24). Thereafter, on July 2, 2008, Gallagher Bassett sent an Initial Notification Letter again detailing the sexual "assaults" being claimed by Matthew Doe. (*Id.*, at ¶ 25).

On May 14, 2012, the Archdiocese reached a settlement with Matthew Doe whereby, in exchange for settlement monies, Matthew Doe agreed to "release and forever discharge The Hartford Roman Catholic Diocesan Corporation ("Archdiocese of Hartford") and all of its past, present and future Archbishops, Bishops, Auxiliary Bishops, Priests, including but not limited to *Rev. Ivan Ferguson*, . . . , from any and all manner of liability . . . including but not limited to all matters arising out of or relating to *alleged sexual misconduct* as alleged in a certain civil action entitled: **Matthew Doe v. The Hartford Roman Catholic Diocesan Corporation** . . . ." (*Id.*, at ¶ 26) (emphasis added).

After the Archdiocese settled each of the Underlying Claims it provided notice to Interstate that it had paid the Underlying Claimants. (*Id.*, at ¶ 27). However, disputes existed between the parties regarding, *inter alia*, Interstate's entitlement to documents related to the Underlying Claims as well as reasonably detailed information regarding the status, settlement and defense of the Underlying Claims. While these disputes were

7

ongoing, the Archdiocese initiated the present action on November 19, 2012. (*Id.*, at ¶ 28).

### C.  The Lawsuit

The Complaint alleges causes of action against Interstate for breach of contract (Count One), breach of the covenant of good faith and fair dealing (Count Two), and violation of CUIPA/CUTPA (Count Three), each arising out of Interstate's alleged failure to compensate the Archdiocese for payments made by the Archdiocese in defending and settling the Underlying Claims. (*See* November 19, 2012 *Compl.*, Dkt. No. 1)("Complaint"); *SOF*, ¶ 29). In its Complaint, the Archdiocese affirmatively asserts that the Underlying Claimants each claimed to have been sexually abused by priests of the Archdiocese and also claimed that the Archdiocese failed to protect them from the sexual abuse of its clergy. (*Id.*, at ¶¶ 23, 31, 38, and 45; *SOF*, ¶ 30).

Interstate filed its Answer to the Complaint on January 11, 2013. (*See* January 11, 2013 Answer and Affirmative Defenses, Dkt No. 16; *SOF*, ¶ 31). In its Answer, Interstate admits that the Underlying Claimants each claim to have been sexually abused by priests of the Archdiocese and asserts fourteen affirmative defenses. (*Id.*, at ¶¶ 23, 31, 38, 45 and Affirmative Defenses; *SOF*, ¶ 31). Interstate's Eighth Affirmative Defense states that: "[t]he Assault and Battery Exclusion contained in the Lloyd's Policy, to which the Interstate Policy follows form, bars coverage for any Assured when properly interpreted and applied." (*Id.*, at Eighth Affirmative Defense; *SOF*, ¶ 32).

## APPLICABLE LEGAL STANDARDS

### A.    Summary Judgment Standard

Pursuant to Federal Rule of Civil Procedure 56, "[a] party may move for summary judgment, identifying each claim or defense–or the part of each claim or defense–on which summary judgment is sought." Summary judgment must be granted when the pleadings and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby*, 477 U.S. 242, 247, 91 L. Ed. 2d 202, 106 S.Ct. 2505 (1986). Although the movant carries the initial burden to demonstrate the absence of a genuine issue of material fact, once that burden is met, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." FED. R. CIV. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 91 L. Ed. 2d 265, 106 S.Ct. 2548 (1986).

Furthermore, "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Therefore, where the movant discharges its burden, the opposing party must do more than simply show that there is some metaphysical doubt as the material facts and bring forward sufficient evidence upon which a reasonable jury could return a verdict in its favor. *Matsushita Electric Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 89 L. Ed. 2d 538, 106 S. Ct. 1348 (1986).

### B.    Insurance Policy Interpretation

Construction of an insurance policy is a question of law for the court. *Flint v. Universal Mach. Co.*, 238 Conn. 637, 642, 679 A.2d 929 (1996). "The interpretation of

an insurance policy, like the interpretation of other written contracts, involves a determination of the intent of the parties as expressed by the language of the policy . . . ." *Community Action v. American Alliance Insurance Company,* 254 Conn. 387, 399, 757 A.2d 1074 (2000). The parties' intent is to be "derived from the four corners of the policy," and, where the policy language is unambiguous, the "policy words must be accorded their natural and ordinary meaning . . . ." *Id.* The legal effect of an insurance contract must be determined from the words of the entire contract, and courts may not violate the clear meaning to create an ambiguity. *Buell Indus. v. Greater N.Y. Mut. Ins. Co.,* 259 Conn. 527, 539, 791 A.2d 489 (2002) ("Each and every sentence, clause, and word of a contract of insurance should be given operative effect. Since it must be assumed that each word contained in an insurance policy is intended to serve a purpose, every term will be given effect if that can be done by any reasonable construction"); *Nat'l Grange Mut. Ins. Co. v. Santaniello,* 290 Conn. 81, 89, 961 A.2d 387 (2009) ("In determining whether the terms of an insurance policy are clear and unambiguous, [a] court will not torture words to import ambiguity where the ordinary meaning leaves no room for ambiguity . . . ."). Moreover, courts may not rewrite an insurance contract or add meaning that is not present. *Hammer v. Lumberman's Mut. Cas. Co.,* 214 Conn. 573, 591, 573 A.2d 699 (1990) ("A court cannot rewrite the policy of insurance or read into the insurance contract that which is not there."). The fact that an insurance policy requires analysis to comprehend its scope does not mean that it is ambiguous. *Buell Indus,* 259 Conn. at 539 ("[A] court will not torture words to import ambiguity, where the ordinary meaning leaves no room for ambiguity and words do not become ambiguous simply because lawyers or laymen contend for different meanings . . . The fact that the parties

advocate different meanings of [policy language] does not necessitate a conclusion that the language is ambiguous . . . There is no presumption that language in insurance contracts is inherently ambiguous."). Courts are not to put strained or unnatural constructions on the terms of a policy in order to create uncertainty or ambiguity. *Santaniello*, 290 Conn. at 89.

## ARGUMENT

## I. THE ASSAULT AND BATTERY EXCLUSION BARS COVERAGE FOR THE UNDERLYING CLAIMS[3]

Interstate has no duty to indemnify the Archdiocese because the Underlying Claims are barred by the Lloyd's Policies Assault and Battery Exclusion. The Assault and Battery Exclusion is the same in each relevant policy period, and states, in relevant part, that the Archdiocese's insurance does not apply "to liability of **any Assured** for assault and battery committed by or at the direction of **such Assured**. . . ." (emphasis added). The phrase "any Assured," when used in an exclusionary clause, has been consistently interpreted as expressing a contractual intent to create joint obligations and to prohibit recovery as to all insureds. Moreover, the phrase "such Assured" as used in the exclusion has been interpreted as referring back to the phrase "any Assured." Consequently, the Assault and Battery Exclusion categorically excludes coverage for both the insured who committed or directed the assault and battery as well as any other Assureds.[4]

---

[3]    Interstate disputes that the underlying claims constitute an occurrence under the Lloyd's Policies. However, for purposes of this Motion for Summary Judgment only, Interstate will assume that the Archdiocese can meet its burden of establishing an occurrence under the subject policies with respect to each of the Underlying Claims.

[4]    Connecticut courts have broadly and consistently defined the term "assault and battery" in the context of insurance contracts, "holding that in the civil context in which the insurance contract was made,

11

**A.      The Ninth Circuit Court of Appeals Decision Interstate Fire & Casualty Co v. Roman Catholic Church of Phoenix.**

The leading case regarding the interpretation and application of the subject Assault and Battery Exclusion is *Interstate Fire & Casualty Co v. Roman Catholic Church of Phoenix*, 761 F.3d 953 (9th Cir. 2014) ("*Diocese of Phoenix*"). That case arose out of the Phoenix Diocese's settlement of four underlying lawsuits, each arising out of the alleged sexual abuse of minors by priests of the Diocese. *Interstate Fire & Casualty Co v. Roman Catholic Church of Phoenix*, No. 09-01405-PHX-NVW, 2011 WL 587163 (D. Conn. Feb. 8, 2011).[5] In *Diocese of Phoenix*, the underlying claims against the Diocese ranged from intentional torts to negligence. *Id.*, at *3. As in the present case, sexual abuse of minors by priests of the Diocese was a factual element common to all of the claims. *Id.*, at *3-4. After settling the underlying claims, the Diocese sought indemnification from Interstate. *Id.*, at *3. In response, Interstate filed a declaratory judgment action seeking, *inter alia*, a declaration that the Diocese's defense and settlement costs were excluded by the policies' Assault and Battery Exclusion. *Id.* The Diocese counterclaimed for breach of contract and bad faith and the parties cross moved for summary judgment. *Id.*

In its motion for summary judgment, Interstate argued, *inter alia*, that, because the Assault and Battery Exclusion expressly and unambiguously precludes coverage for

---

the common meaning of 'assault' and 'battery' subsumes all forms of 'tortious menacing and unwanted touching.' *United National Ins. Co. v. Waterfront New York Realty Corp.*, 994 F.2d 105, 108 (D. Conn. 1993). Hence a sexual assault constitutes an assault and battery." *Mount Vernon Fire Ins. v. Morris*, Docket No. CV-02-0173643S, 2004 WL 1730133, 2004 Conn. Super. LEXIS 1790 (Conn. Super. Ct. July 1, 2004), *aff'd*, 90 Conn. App. 525, 887 A.2d 910 (2005), *cert. denied*, 281 Conn. 544, 917 A.2d 538 (2007). Given the foregoing, there can be no real question that the sexual abuse claimed by the underlying claimants constitutes an assault and battery for purposes of this exclusion.

[5]      Courtesy copies of unreported cases are attached to this brief as Exhibit I as per Judge Arterton's Pre-Trial Preferences.

"any Assured", and because the phrase "such Assured" plainly refers back to "any Assured", the assault and battery exclusion operated as a categorical bar to coverage for both the insured who committed the assault and battery and all other Assureds, including the Diocese. *Roman Catholic Church Phoenix*, 761 F.3d at 954-55. Despite acknowledging the viability of Interstate's argument, the District Court construed the exclusion as applying only to the offending priest and, therefore, concluded that the exclusion did not foreclose coverage as to all insureds. *Id.*, at 955.

On appeal, the Ninth Circuit reversed the District Court's grant of summary judgment and concluded, on the basis of the Assault and Battery Exclusion, that Interstate was entitled to summary judgment as to all counts of the declaratory judgment action against the Diocese. In reaching this conclusion, the Ninth Circuit focused on the following two principles of insurance policy interpretation: (1) policy terms such as "any" and "such" are to be accorded their plain and ordinary meaning; and (2) courts must read policy terms in context and not seek to rewrite a policy's text. *Id.*, at 955. With these principles guiding its analysis, the Ninth Circuit rejected the Diocese's argument that the phrases "any Assured" and "such Assured" should be presumed to have different meanings and held that "when an exclusionary clause precludes recovery to 'any insured,' the term is not ambiguous and clearly encompasses all persons insured under the policy." *Id.* The Ninth Circuit further concluded that the phrase "such Assured" as used in the Assault and Battery Exclusion, plainly refers back to the phrase "any Assured":

> [T]he word "such" is defined as "of a kind or character about to be indicated, suggested, or exemplified" or "having a quality already or just specified—used to avoid repetition of a descriptive term." *Webster's Third*

*New International Dictionary* 2283 (2002). This definition indicates that "such Assured" in the exclusion carries the precise meaning as the assured "just specified." *See id.; see, e.g., Spartan Petroleum Co. v. Federated Mut. Ins. Co.*, 162 F.3d 805, 809 (4th Cir. 1998) (holding that "such" property damaged referred back to the last mentioned "property damage" in the policy at issue). ***Here, the assured "just specified" is "any Assured"—those who allegedly committed the assault and battery as well as innocent co-insureds.***

> \*       \*       \*       \*

*Id.* (emphasis added).

In granting summary judgment on behalf of Interstate, the Ninth Circuit also expressly rejected the Diocese's attempts to read additional language into the text of the policies:

> The Diocese's argument . . . requires that we read additional language into the text. The only assured "just specified" in the exclusion is "any Assured." A narrower specification, such as "the assured" or "that assured," is nowhere to be found. . . . Nor does "any" mean "any one"; the exclusion expressly states "any *Assured*." We decline to cast aside the ordinary meaning of these terms in favor of words that are not included in the text. . . .

*Id.*, at 955-56. (citations omitted). [6]

### B. Connecticut Law Supports The Same Conclusion Reached by The Ninth Circuit.

The Ninth Circuit's decision in *Diocese of Phoenix* interprets the exact same policy language within the exact same insurance program and the exact same type of underlying claims as those at issue in the present case. Moreover, the Ninth Circuit's

---

[6]    Notably, the Fifth and Eleventh Circuits have also applied similar policy interpretations. *See TIB Specialty Ins. Co. v. Pinkmonkey.com Inc.*, 375 F.3d 365, 372 (5th Cir. 2004) (holding that coverage was foreclosed because policy exclusion "use[d] the specific term 'such Insured' to indicate the same insured as previously referred to," namely, "an Insured"); *Spartan Petroleum Co. v. Federated Mut. Ins. Co.*, 162 F.3d 805, 809 (4th Cir. 1998) (holding that "such" property damage referred back to the last mentioned "property damage" in the policy at issue).

reasoning is entirely consistent with Connecticut case law and should be applied in the present case. First, the basic rules of policy interpretation applied by the Ninth Circuit are followed in Connecticut, as they are in most states. *Community Action,* 757 A.2d 1074 at 1081 ("[P]olicy words must be accorded their natural and ordinary meaning . . . ."); *Hammer,* 214 Conn. at 591 ("A court cannot rewrite the policy of insurance or read into the insurance contract that which is not there."). Second, in Connecticut, as in Arizona, the language "any insured" when used in an exclusion has been consistently interpreted as expressing a contractual intent to create joint obligations and to prohibit recovery by all insureds. For example, in *McCauley v. N.H. Ins. Co.*, 716 F. Supp. 718, 721 (D. Conn. 1989) (Dorsey, U.S.D.J.) the court interpreted an insurance policy that provided that the insured "shall not be liable for loss occurring as a result of 'any fraudulent, dishonest, or criminal act done by or at the instigation of *any insured*, partner, or joint adventurer in or of any insured, [or] *an officer*, director or trustee of *any insured*.'" *Id.*, at 721 (Emphasis in original). The Court, in construing this language, noted that "[t]he language 'any insured' has been consistently interpreted as expressing a contractual intent to create joint obligations and to prohibit recovery by an innocent co-insured." *Id.*; *see also Mount Vernon Fire Ins.*, 2004 WL 1730133 at *10 (concluding that under the plain language of a Child Molestation Exclusion, "[t]he use of the phrase "any insured" precludes coverage for all insureds under the policy, even a co-insured innocent of any claims of sexual molestation.").[7]

---

[7]     Courts around the country likewise interpret the phrase "any insured" in the context of exclusions as unambiguously precluding coverage for *all* insureds. *See e.g. Murphy v. Allied World Assur. Co. (U.S.),* 370 Fed. Appx. 193, 194 (2d Cir. 2010) ("[i]n the context of the [prior knowledge exclusions], the words 'any insured' unambiguously preclude coverage for innocent co-insureds."); *Sales v. State Farm Fire and Cas. Co.*, 849 F.2d 1383, 1385 (11th Cir. 1988) ("[u]nlike the phrase 'the insured,' the phrase 'any insured'

Third, in the context of interpreting statutes, Connecticut courts have routinely adopted the same interpretation of "such" as applied by the Ninth Circuit in *Diocese of Phoenix*, i.e. the term "such assured" refers back to the previously referenced "any insured." For instance, in *McWeeny v. City of Hartford*, 287 Conn. 56, 946 A.2d 862 (2008), the Connecticut Supreme Court held that the term "such individual" plainly refers back to "any individual," for purposes of interpreting Conn. Gen. Stat. § 46a-60.[8] *Id.*, at 869 (concluding that term "such individual" plainly refers back to term "any individual"). Similarly, in *LaProvidenza v. State Employees' Retirement Commission*, 178 Conn. 23, 420 A.2d 905 (1979), the court focused on the ordinary, plain meaning of the word "such" and held, in the context of interpreting Conn. Gen. Stat. § 7-436 (a)[9] that "[t]he word 'such' has been construed as an adjective referring back to and identifying something previously spoken of; the word naturally, by grammatical usage, refers to the

---

unambiguously expresses a contractual intent to create joint obligations and to prohibit recovery by an innocent co-insured"); *XL Specialty Ins. Co. v. Agoglia*, No. 08 Civ. 3821, 2009 WL 1227485 at * 13 (S.D.N.Y. Mar. 2, 2009) ) ("[I]it is well established that the language 'any insured' has been consistently interpreted as expressing a contractual intent to create joint obligations and to prohibit recovery by an innocent co-insured. Indeed, unlike the phrase 'the insured,' the phrase 'any insured' unambiguously expresses a contractual intent to create joint obligations and to prohibit recovery by an innocent co-insured."); *Coregis Ins. Co. v. Lyford*, 21 F. Supp. 2d 695, 698 (S.D. Tex. 1998) (holding that exclusions concerning the "acts of 'an' or 'any' insured, as opposed to exclusions concerning acts of 'the' insured, operate to bar coverage for all insureds when one insured commits such an act.").

[8] Conn. Gen. Stat. § 46a-60 (a), provides in relevant part that "[i]t shall be a discriminatory practice in violation of this section . . . (1) [f]or an employer, by the employer or the employer's agent, except in the case of a bona fide occupational qualification or need, to refuse to hire or employ or to bar or to discharge from employment *any individual* or to discriminate against *such individual* in compensation or in terms, conditions or privileges of employment because of the individual's race, color, religious creed, age, sex, marital status, national origin, ancestry, present or past history of mental disability, mental retardation, learning disability or physical disability, including, but not limited to, blindness . . . ." (emphasis added.)

[9] Conn. Gen. Stat. § 7-436 (a) provides in relevant part: " No retirement allowances under this section, before the reduction prescribed in the preceding sentence plus workmen's compensation payments and benefits under the old age and survivors insurance system on account of service in a participating municipality, if any, shall exceed one-twelfth of three-quarters of the member's average annual pay during the three highest-paid years of municipal service, and, subject to the foregoing maximum limit, no *such allowance* plus payments shall be less than one thousand dollars annually." (emphasis added.)

16

last antecedent. . . . The accepted dictionary definitions of 'such' include 'having a quality already or just specified, 'previously characterized or specified,' and 'aforementioned.'" *Id.* at 27; *see also e.g. Bahre v. Hogbloom*, 162 Conn. 549, 556, 295 A.2d 547 (1972) (interpreting the term "such" in Conn. Gen. Stat. § 2288c and reasoning that "[t]he word 'such' has been construed as a related adjective referring back to and identifying something previously spoken of and that it naturally, by grammatical usage, refers to the last precedent."); *Nichols v. Warren*, 209 Conn. 191, 550 A.2d 309 (1988) (concluding that "such reduction" in the second sentence of Conn. Gen. Stat. § 18-7a (c) plainly refers back to "reduction" in the first sentence).

Moreover, any interpretation of the Assault and Battery exclusion which eliminates the effect of the phrase "any Assured" would materially alter the policies by effectively adding a "severability clause," i.e. a provision which permits courts to consider an exclusion separately with respect to each insured. Such a reading is inconsistent with Connecticut law – *see e.g. McCauley Enters., Inc.*, 716 F. Supp. at 721 (D. Conn. 1989) ("[t]he language 'any insured' has been consistently interpreted as expressing a contractual intent to create joint obligations and to prohibit recovery by an innocent co-insured.") – and the policies themselves. The Lloyd's Policies, from which the Interstate Policies "follow form," are notably devoid of a severability clause.

Similarly, an interpretation that eliminates the effect of the phrase "any Assured" would require the court to effectively re-write the exclusion to read as follows:

THIS INSURANCE DOES NOT APPLY –

(a) to liability of any **one** Assured for assault and battery committed by or at the direction of ~~Such~~ **that** Assured . . .

17

This type of revision would again materially alter the Interstate Policies. The law does not permit a court to alter or supply policy terms. *Buell Indus.*, 259 Conn. at 539 ("[C]ourts cannot indulge in a forced construction [of policy terms] ignoring provisions or so distorting them as to accord a meaning other than that evidently intended by the parties."); *Hammer,* 214 Conn. at 591 ("A court cannot rewrite the policy of insurance or read into the insurance contract that which is not there.").

The Assault and Battery Exclusion expressly and unambiguously precludes coverage for "any Assured," a phrase that has been universally interpreted as precluding coverage for *all* insureds. Moreover, as the Ninth Circuit correctly held in *Diocese of Phoenix* and as Connecticut courts have applied in analogous contexts, the plain meaning of the phrase "such Assured" refers back to the phrase "any Assured" and, therefore, the plain meaning of the Assault and Battery Exclusion operates as a categorical bar to coverage for both the insured who commits the assault and battery and all other insureds. Consequently, the Underlying Claims fall outside of the Interstate Policies' coverage by virtue of the Assault and Battery Exclusion and Interstate is entitled to summary judgment as to Count One of the Archdiocese's Complaint.

## II. BECAUSE INTERSTATE IS ENTITLED TO SUMMARY JUDGMENT AS TO THE BREACH OF CONTRACT COUNT, IT IS ALSO, AS A MATTER OF LAW, ENTITLED TO SUMMARY JUDGMENT AS TO THE BAD FAITH AND CUIPA/CUTPA COUNTS

In Connecticut, numerous courts have recognized that when an insurer is found to have no obligation to pay under its policy, its refusal to do so cannot provide the basis for a claim of bad faith. *See, e.g., Capstone Bldg. Corp. v. Am. Motorists Ins. Co.*, 308 Conn. 760, 798, 67 A.3d 961 (2013) ("[B]ad faith is not actionable apart from a wrongful denial of a benefit under the policy. . . ."); *Ridley v. National Union Fire Ins. Co. of Pittsburgh*,

18

No. 3:11-CV-1713-WWE, 2014 WL 3687739 (D. Conn., July 22, 2014) (granting summary judgment as to plaintiff's bad faith count based upon finding that insurer did not breach insurance policy); *Chorches v. Stewart Title Guaranty Co.*, 48 F. Supp. 3d 151, 157 (D. Conn. 2014) (*Meyer, U.S.D.J.*) ("Because plaintiff's contract claim fails, so too does his claim of bad faith denial of coverage."); *McCarthy v. Travelers Indemnity Company*, Docket No. CV 970345443, 2000 WL 372801 at *8-10 (Conn. Super. Ct. March 29, 2000) (*Melville, J.*) (noting that numerous trial courts have held that a plaintiff must show that she is entitled to recover under an insurance policy before the insurer can be found to have acted in bad faith.); *Patrons Mutual Ins. Co. v. Maguire*, Docket No. CV-95-374329, 1997 WL 162821 (Conn. Super. Ct. March 26, 1997) (*McMahon, J.*) (where it is determined that insurer was not obligated to indemnify or defend, insurer could not have breached duty of good faith); *Vincenzi v. Nationwide Mutual Ins. Co.*, Docket No. CV-337630, 1997 WL 80672 (February 6, 1997) (*Skolnick, J.*) (where insurer found to have no obligation to pay, bad faith claim based upon refusal to pay fails as well); *Sponzo v. Hartford Underwriters Ins. Group*, Docket No. CV-5433134, 1996 WL 155384 at *3 (Conn. Super. Ct. March 15, 1996) (*Aurigemma, J.*) ("Failure to pay a claim which it was not obligated to pay under the terms of the policy is clearly not bad faith"). Given the foregoing case law, if the Court grants summary judgment in Interstate's favor as to Count One (Breach of Contract), then, as a matter of law, it should also grant summary judgment as to Count Two (Bad Faith) of the Archdiocese's Complaint.

Similarly, Connecticut courts have held that when an insurer is entitled to summary judgment with respect to an insured's breach of contract count, then, as a matter

of law, it is also entitled to summary judgment with respect to an insured's CUIPA/CUTPA count, particularly where the CUIPA/CUTPA count is premised on the insurer's allegedly improper failure to pay the claim. *See Ridley*, 2014 WL 3687739 at \*3 (granting summary judgment to insurer as to plaintiff's CUIPA/CUTPA count based upon finding that insurer did not breach insurance policy); *Rancourt v. Allstate Ins. Co.*, Docket No. CV-06-5001222, 2008 WL 5255560 at \*3 (Conn. Super. Ct. December 1, 2008) (*Abrams, J.*) ("[S]ince the defendant [insurer] had no obligation to pay under the policy, the defendant could not have violated CUIPA or CUTPA."); *Vincenzi*, 1997 WL 80672 at \*2-3 (finding that where insurer found to have no obligation to pay, CUIPA/CUTPA claim based upon refusal to pay fails as well); *Wright v. State Farm Mutual Automobile Ins. Co.*, Docket 960561270, 1997 WL 746434 at \*4 (Conn. Super. Ct. Nov. 18, 1997) (*Aurigemma, J.*) ("[Insured's] failure to comply with the terms of the policy relieved State Farm of its obligations thereunder. Having no obligation to pay under the policy, State Farm could not have violated CUIPA or CUTPA.").

In the present case, the Archdiocese's CUIPA/CUTPA claim expressly alleges that "Interstate's conduct, *in improperly refusing to pay the ultimate net loss in excess of $200,000 in each of the Underlying Claims is in contravention of its policies*, violates the Connecticut Unfair Insurance Practices Act ("CUIPA"), Conn. Gen. Stat. § 38a-815, et seq., including § 38a-816 (6), and constitutes an unfair and deceptive practice in the business of insurance." (*Compl.* at ¶ 66, Dkt. No. 1) (emphasis added.). Given the foregoing, the Archdiocese's CUIPA/CUTPA claim, like its breach of contract claim, is necessarily dependent on a finding that Interstate improperly failed to pay the Underlying Claims. *See Id.*, Count One, at ¶ 54 ("As a result of Interstate's refusal to promptly

indemnify the Archdiocese for its loss in each of the Underlying Claims, Interstate has breached its contractual obligations as set forth in its policies."). Indeed, the remainder of the Archdiocese's CUIPA/CUTPA count consists largely of boilerplate statutory language that presupposes that the Underlying Claims are covered. For example, the Archdiocese alleges that Interstate violated Conn. Gen. Stat. § 38a-816 (6)(f) and (6)(g) as follows:

> Section 38a-816 (6)(f): Interstate's general business practice of not attempting in good faith to effectuate prompt, fair and equitable settlements of *claims in which liability has become reasonably clear* . . .

> Section 38a-816 (6)(g): Interstate's general business practice of compelling insureds to institute litigation to recover *amounts due under its insurance policies*.

*Id.*, at ¶ 69 (c) and (d) (emphasis added). If the Court grants summary judgment as to Count One, then Interstate did *not* improperly refuse to pay the ultimate net loss, liability was *not* "reasonably clear" and amounts were *not* "due under" the policies. Consequently, the Archdiocese's CUIPA/CUTPA claim also fails as a matter of law. [10]

Consequently, summary judgment should be rendered with respect to Counts Two (Bad Faith) and Three (CUIPA/CUTPA) of the Archdiocese's Complaint.

---

[10]     To the extent that the Archdiocese's remaining CUIPA/CUTPA allegations can be construed as an apparent attack on Interstate's investigative efforts, the Connecticut Supreme Court has acknowledged that an allegedly "inadequate investigation causes no compensable damage to the insured *when no benefits are due under the policy*." *Capstone*, 308 Conn. at 802 n.44 (emphasis added). Moreover, in order to prevail on a CUIPA/CUTPA count, a "plaintiff must be able to establish *both* that the defendant has engaged in a prohibited act *and* that 'as a result of' that act, the plaintiff suffered an injury." *Royal Indem. Co. v. King*, 532 F. Supp. 2d 404, 412 (D. Conn. 2008) (emphasis added). Consequently, if the Court finds for Interstate with respect to Count One (Breach of Contract), the Archdiocese claims of inadequate investigation, standing alone, are insufficient to maintain a CUIPA/CUTPA count because there would be no ascertainable loss.

## CONCLUSION

As the Ninth Circuit Court of Appeals correctly concluded, the Lloyd's Policies' Assault and Battery Exclusion, as followed by the Interstate Policies, excludes coverage where, as here, each of the Underlying Claims arise out of alleged sexual abuse by priests of the Archdiocese. Moreover, because Interstate is entitled to summary judgment with respect to the Archdiocese's breach of contract count (Count One), it is also, as a matter of law, entitled to summary judgment with respect to plaintiff's bad faith (Count Two) and CUIPA/CUTPA (Count Three) counts. Consequently, this Court should grant Interstate's Motion for Summary Judgment as to all counts of the Archdiocese's Complaint.

DEFENDANT,
INTERSTATE FIRE & CASUALTY
COMPANY

By:   /s/ Rhonda J. Tobin
Rhonda J. Tobin (ct07755)
Stephen O. Clancy (ct27617)
ROBINSON & COLE LLP
280 Trumbull Street
Hartford, CT 06103-3597
Tel. No. (860) 275-8200
Fax No. (860) 275-8299
Email: rtobin@rc.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 14, 2015, the foregoing Defendant's Memorandum in Support of Motion for Summary Judgment was filed electronically. Notice of this filing will be sent by e-mail to all Parties by operation of the Court's electronic filing system. Pursuant to the Court's July 21, 2015 Order (Dkt. No. 97) granting the parties' *Joint Motion for Permission to Implement Modified Filing Procedure* (Dkt. No. 96), notice of the filing of Defendant's Motion for Summary Judgment was previously filed via ECF on August 31, 2015. In addition, a complete unredacted copy of this Motion was previously provided to the Court and served on opposing counsel in accordance with the Court's July 21, 2015 Order (Dkt. No. 97) granting the parties' *Joint Motion for Permission to Implement Modified Filing Procedure* (Dkt. No. 96).

                                      /s/Rhonda J. Tobin
                                      Rhonda J. Tobin